UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH JEAN DEPRIEST,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:18-CV-06798 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Deborah Jean DePriest ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 16) and Plaintiff's reply (Dkt. 18). For the reasons discussed below, Defendant's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 22, 2015. (Dkt. 8 at 16).[1] In her application, Plaintiff alleged disability beginning January 1, 2010, due to right knee injury, cysts on her left foot, COPD, depression, and cramps in both feet. (*Id*. at 16, 212, 220). Plaintiff's application was initially denied on April 27, 2015. (*Id*. at 79-80). At Plaintiff's request, a hearing was held on August 31, 2017, in Rochester, New York, before administrative law judge ("ALJ") Brian Kane. (*Id.* at 37-71, 87-89). On January 10, 2018, the ALJ issued an unfavorable decision. (*Id.* at 13-30). Plaintiff requested Appeals Council review; her request was denied on September 19, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2012. (Dkt. 8 at 18). At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful work activity from January 1, 2010, the alleged onset date, through December 31, 2012, the date last insured. (*Id*.).

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of: hypertension; Hepatitis C; hyperlipidemia; and right knee osteoarthritis status-post surgery. (*Id*.). The ALJ further found that Plaintiff's medically determinable impairments of cognitive decline and depression were nonsevere prior to the date last insured. (*Id*. at 19).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 21). The ALJ particularly considered the criteria of Listings 1.02 and 5.05 in reaching his conclusion. (*Id.* at 21-22).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (*Id*. at 22). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, through the date last insured, Plaintiff was capable of performing her past relevant work as a bookkeeper. (*Id*. at 25-26). The ALJ accordingly found that Plaintiff was not disabled, as defined in the Act, at any time from the alleged onset date through the date last insured. (*Id*. at 26).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to remand this matter to the Commissioner for calculation and payment of benefits or, in the alternative, for further proceedings. (Dkt. 10-1 at 17). Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence.

(*Id*. at 10-17). The Court has considered this argument and finds it without merit for the reasons set forth below.

### A. <u>Mental RFC Finding</u>

As noted above, the ALJ found that Plaintiff did not have any severe mental impairments through the date last insured and did not incorporate any mental limitations into the RFC finding. Plaintiff contends that this was error and that the ALJ should have afforded controlling weight to the opinion of Plaintiff's treating primary care physician, Dr. Michael Myers. The Court disagrees.

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*. "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation

omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id*. (quotations omitted).

An ALJ must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

In this case, Dr. Myers completed a medical source statement related to Plaintiff on May 9, 2017 (more than four years after her date last insured). (Dkt. 8 at 506-511). Dr. Myers indicated that Plaintiff had "cognitive decline possibly related to Hepatitis C" and opined that she was unable to engage in full-time competitive employment on a sustained basis due to "poor memory." (*Id*. at 506). Dr. Myers opined that Plaintiff was wholly unable to perform in a regular work setting in all aspects of "understanding and memory," "sustained concentration and memory," and "adaptation," and unable to perform for more than 20% of an eight-hour workday in all aspects of "social interaction." (*Id*. at 508). Dr. Myers indicated that these limitations had been present "since at least December of 2012." (*Id*. at 511).

The ALJ recontacted Dr. Myers twice for clarification of his opinion. The ALJ noted that Dr. Myers' treatment notes through December 2012 did "not support this extreme level of limitations at that time" and asked Dr. Myers whether Plaintiff's condition had changed since December 31, 2012, and whether she had different limitations at that time. (*Id*. at 907). Dr. Myers responded on October 4, 2017, but did not answer the ALJ's questions. Instead, Dr. Myers simply reiterated his opinion that Plaintiff is "totally disabled by her memory deficits." (*Id*. at 909).

In his decision, the ALJ gave Dr. Myers' opinion regarding Plaintiff's functional limitations prior to the date last insured little weight. (*Id*. at 19). The ALJ noted that Dr. Myers was Plaintiff's primary care physician and that he had seen Plaintiff three to four times a year for 30 years. (*Id*.). However, the ALJ concluded that there was a "complete lack of objective medical findings" to support Dr. Myers' statements. (*Id*. at 20). The ALJ explained that there was "only a brief mention of cognitive decline in the record prior to the date last insured" and that there was "no mental status examination or other cognitive testing." (*Id*.).

The Court finds no error in the ALJ's assessment of Dr. Myers' opinion. The ALJ considered the required factors, including Dr. Myers' specialty and the length, frequency, and nature of his treatment of Plaintiff, but ultimately concluded that Dr. Myers' opinion was not supported by objective evidence or consistent with the record as whole.

The ALJ adequately explained his reasons for giving little weight to Dr. Myers' opinion. An ALJ need not give controlling weight to a treating physician's opinion where it is inconsistent with his own treatment notes. *See Dunne v. Comm'r of Soc. Sec.*, 349 F.

Supp. 3d 250, 258 (W.D.N.Y. 2018). The earliest mention in Dr. Myers' records of any cognitive decline occurred in October 2012, when Plaintiff had an appointment to discuss "bumps" on the bottom of her left foot. (Dkt. 8 at 561). Plaintiff reported that her short-term memory was not as good as it had been previously, but that she had not gotten lost. (*Id*. at 562). Dr. Myers noted that Plaintiff had "early signs" of "very mild cognitive decline," but did not perform any testing. (*Id*. at 563). At a visit on December 7, 2012, no mention was made of any cognitive decline, and Dr. Myers did not assess Plaintiff with any mental impairments. (*Id*. at 587-88). It was not until July 2013 that Dr. Myers diagnosed Plaintiff with cognitive decline, noting that she was "getting forgetful." (*Id*. at 598-98). Treatment notes from March 2014 list "cognitive decline" as an active problem, and indicate that it has been present from "7/31/2013-present." (*Id*. at 606). However, at that visit, Plaintiff was able to "remember[] the 3 objects from her visit one year ago" as well as the president and the vice president. (*Id*. at 611-12). In August 2014, Dr. Myers again described Plaintiff's cognitive decline as "mild" and indicated it was "stable." (*Id*. at 666). It was not until October 2014 that Dr. Myers noted that Plaintiff had a clear "loss of her memory skills" and ordered an MRI. (*Id*. at 694, 699). That MRI was performed on October 30, 2014, and was unremarkable. (*Id*. at 426). In February 2015, Plaintiff "remember[ed] well enough to perform 28/30 on the Mini-Mental Status exam." (*Id*. at 730). In April 2015, Dr. Myers described Plaintiff's cognitive decline as "[v]ery gradual." (*Id*. at 745). In short, Dr. Myers' own contemporaneous treatment notes show that Plaintiff had, at most, the beginning of mild cognitive deficits prior to the date last insured, and provide no support for the extreme limitations identified by Dr. Myers in 2017.

The other evidence of record also supports the ALJ's conclusions regarding Dr. Myers' opinions. As the ALJ noted, the record lacks any mental status examinations or psychiatric treatment prior to the date last insured. *See Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) ("Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations."). The ALJ also noted that Plaintiff had continued to work part-time at a family business after the alleged onset date and that there was no evidence that Plaintiff's cognitive decline had impaired her ability to perform activities of daily living prior to the date last insured. (Dkt. 8 at 21). On this record, the Court finds that the ALJ identified good reasons for discounting Dr. Myer's opinion.

Plaintiff contends that the ALJ "failed to adequately consider the retroactivity of [Dr. Myers'] opinion, especially in failing to consider whether, by December 2012 (her date last insured), Plaintiff was already suffering from a disabling impairment that could be expected to last for 12 months." (Dkt. 10-1 at 13). The Court finds this argument unpersuasive. An applicant for DIB must show that he or she became disabled prior to the date last insured. *See Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569 RJS KNF, 2018 WL 1581993, at *2 (S.D.N.Y. Mar. 27, 2018) ("To establish eligibility for DIB, . . . a claimant must demonstrate that his condition reached disabling severity while he was still insured— that is, on or before the expiration of his date last insured."), *aff'd*, 767 F. App'x 207 (2d Cir. 2019). The Act's definition of ability encompasses both the existence of an impairment and an associated inability to work. *See Barnhart v. Walton*, 535 U.S. 212,

222 (2002). In other words, it is not enough for Plaintiff to demonstrate that she began to suffer from cognitive decline prior to her date last insured—she must also demonstrate that it caused her to be unable to work prior to that date. As discussed above, Dr. Myer's own treatment notes wholly undercut any such conclusion.

The Court further rejects Plaintiff's argument that the ALJ's mental RFC finding is inadequate because it is not supported by a medical opinion. "Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (citation, quotation, and alteration omitted). In particular, an ALJ may rely on a treating physician's contemporaneous assessments of a claimant's abilities, in combination with the other evidence of record. *See id.* In this case, the evidence of record, including Dr. Myers' contemporaneous treatment notes, shows that prior to her date last insured, Plaintiff manifested only "early signs" of "very mild cognitive decline" without any associated loss of functioning. (Dkt. 8. at 563). The ALJ appropriately relied on this evidence to determine that Plaintiff did not suffer from a severe mental impairment prior to the date last insured and to make the related determination that, through the date last insured, she did not have any mental functional limitations. The ALJ's assessment of Plaintiff's mental RFC was supported by substantial evidence.

**B.    Physical RFC**

Plaintiff also argues that the ALJ's assessment of her physical RFC was unsupported by substantial evidence. Again, the Court disagrees.

In assessing Plaintiff's physical RFC, the ALJ gave partial weight to the opinions of treating orthopedist Dr. Gregory Lewish. (Dkt. 8 at 23). As the ALJ noted, Dr. Lewish treated Plaintiff from November 2008 to October 2012, with a gap in care from October 2010 from August 2012. (*Id*. at 23-24). During that time period, Dr. Lewish issued several opinions relating to Plaintiff's functioning, "rang[ing] from temporary total disability to light work to sedentary work to part-time work from 2 to 6 hours per day." (*Id*. at 24). In August 2012, near the end of his treatment of Plaintiff, Dr. Lewish indicated that she did not have any "formal restrictions," but that she should "try to minimize prolonged standing [and] walking." (*Id*. at 491).

The ALJ gave partial weight to Dr. Lewish's opinions, noting that many of them predated the alleged onset date and that they further "appear[ed] to be based mostly on the claimant's subjective allegations and desires." (*Id*. at 24-25). Plaintiff identifies no error in the ALJ's assessment of Dr. Lewish's opinions, nor does the Court find any. The Court notes that the ALJ's conclusion that Plaintiff was capable of sedentary work is fully consistent with Dr. Lewish's August 2012 recommendation that she avoid prolonged standing and walking. *See, e.g., Vesneske-Margage v. Berryhill*, No. 1:16-CV-00500 (MAT), 2017 WL 4112021, at *4 (W.D.N.Y. Sept. 18, 2017) ("[S]edentary work does not involve any prolonged walking, standing, or lifting of more than ten pounds. . . .").

The ALJ also appropriately gave no weight to Dr. Myers' opinion regarding Plaintiff's physical functioning. In his May 2017 medical source statement, Dr. Myers indicated that Plaintiff could walk only one city block without rest or severe pain and that she could sit or stand for only 30 minutes at a time. (Dkt. 8 at 509). However, as the ALJ

- 12 -

noted, Dr. Myers did not indicate that Plaintiff had any physical problems in his medical source statement and he offered no explanation whatsoever for his conclusions regarding her abilities to sit, stand, and walk. To the contrary, when asked to list the reasons that Plaintiff was unable to work, the only thing listed by Dr. Myers was "poor memory." (*Id.* at 506). Further, contemporaneous physical examinations were inconsistent with Dr. Myers' May 2017 opinion. (*See, e.g., id.* at 342, 346). The ALJ did not err in declining to credit Dr. Myers' wholly unsupported opinion regarding Plaintiff's exertional limitations.

The Court rejects Plaintiff's argument that the ALJ's assessment was not supported by competent medical opinion. As noted above, the ALJ gave partial weight to Dr. Lewish's opinions and accounted for his August 2012 recommendations regarding Plaintiff's ability to stand and walk. This does not amount to a rejection of Dr. Lewish's medical assessment. *See Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P, 2019 WL 4140936, at *4 (W.D.N.Y. Aug. 30, 2019) (finding that an ALJ did not "reject" a medical opinion where she afforded it partial weight). To the extent Dr. Lewish's opinions varied throughout the relevant time period, it was within the ALJ's discretion to resolve the conflict. *See Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 278 (S.D.N.Y. 2019) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the medical evidence." (quotation and original alteration omitted)).

In sum, the Court finds no error in the ALJ's assessment of Plaintiff's RFC and concludes that his findings were supported by substantial evidence. Accordingly, remand of this matter is not warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 23, 2020
      Rochester, New York